IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERSIE EVERETTE,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C 07-3013 MEJ

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**ORDER DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND FOR FURTHER PROCEEDINGS**

## I. INTRODUCTION

Plaintiff Ersie Everette ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of Social Security, Defendant Michael J. Astrue ("Defendant"), denying his claim for disability insurance benefits. Pending before the Court are the parties' cross-motions for summary judgment. (Dkt. ## 14, 18.) Having read and considered the parties' papers, the administrative record below, and the relevant legal authority, the Court hereby DENIES Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion for summary judgment, and GRANTS Plaintiff's motion to remand for the reasons set forth below.

## II. BACKGROUND

**A.  Procedural Background**

On August 23, 2004, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on April 1, 2000. (Administrative Record ("AR") 65.) He was 36 years old

when he filed his application. (AR 65.) On January 10, 2005, the Social Security Administration initially denied his application, (AR 25), and upheld its denial upon reconsideration on April 15, 2005. (AR 26.) Plaintiff timely filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (AR 39)

On July 20, 2006, ALJ Robert P. Wenten conducted a hearing at which Plaintiff appeared and testified, represented by attorney Betty Herrera for Harvey P. Sackett. (AR 207-33.) The ALJ issued a decision on September 29, 2006, finding that Plaintiff was not disabled under the Social Security Act. (AR 15-20.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council declined to review it on April 11, 2007. (AR 5-7.)

**B.     Summary of Medical History**

In addition to the facts and medical history summarized by the ALJ in his decision, (AR 12-20), the Court shall discuss specific facts and history as necessary.

**C.     The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The sequential inquiry is terminated when a question is answered affirmatively or negatively in such a way that a decision can be made that the claimant is or is not disabled. *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(b). Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability, April 1, 2000. (AR 17.)

At step two, the ALJ must determine, based on medical findings, whether the claimant has a

///

///

///

2

"severe" impairment or combination of impairments as defined by the Social Security Act.[1]  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined that the evidence established the following severe impairments: "status post interbody fusion of the vertebrae at cervical 4, 5, and 6, . . .; disc dessication above and below this point; and spinal stenosis secondary to degenerative disc disease."  (AR 17.)

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or equals an impairment in the Listing of Impairments.  20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt P, App. 1.  "If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis . . . he is conclusively presumed to be disabled."  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) (citations omitted).  Here, the ALJ determined that Plaintiff's impairments did not meet the criteria, finding that [t]here is no evidence of the markers of a listing level spinal impairment to meet the medical criteria of Listing 1.04, describing spinal impairments."  (AR 18.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's Residual Functional Capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(e).  Residual functioning capacity refers to what an individual can still do in a work setting, despite limitations caused by medically determinable impairments.  20 C.F.R. §  416.945(a).  In assessing an individual's RFC, the ALJ must consider his or her symptoms (including pain), signs, and laboratory findings, together with other evidence.  20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(c).  Here, the ALJ determined that Plaintiff has the RFC to perform "light work due to his cervical problems."  (AR 18.)  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. §

---

[1] At step two, "severe" means any impairment or combination of impairments that significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  This is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage in the analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 148, 153-54 (1987).  "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits" at step two of the analysis.  *Id.* at 158.

404.1567(b). As Plaintiff's past relevant work was heavier than light exertion, the ALJ found that Plaintiff is unable to perform past relevant work. (AR 18.)

In the fifth step of the analysis, the burden shifts to the ALJ to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the medically determinable impairments and symptoms, functional limitations, age, education, work experience and skills. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). Here, the ALJ determined that Plaintiff is capable of performing a full range of light work. (AR 20.) As such, the ALJ determined that Plaintiff is not disabled. (AR 20.)

## III. LEGAL STANDARD

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citations omitted). Further, determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id*. Additionally, even if the Court finds that the ALJ erred in making a finding, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1991) (citation omitted).

## IV. ISSUES

Plaintiff seeks reversal of the Commissioner's denial of disability insurance benefits, arguing that:

4

(1)     the ALJ improperly discounted Plaintiff's credibility;

(2)     the ALJ erred in assessing Plaintiff's mental impairment; and

(3)     the ALJ erred in using the Medical-Vocational Guidelines and failing to obtain expert witness testimony.

## V.     DISCUSSION

**A.     Whether the ALJ Failed to Make Specific Findings to Justify his Decision to Discount Plaintiff's Credibility**

Plaintiff first argues that the ALJ improperly discounted his credibility because he dismissed his statements in a single sentence without stating the evidence of record that supported his conclusion.

A two step analysis applies at the administrative level when considering a claimant's subjective credibility regarding her pain symptoms. *Smolen v. Chater,* 80 F.3d 1273, 1281-82 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce the claimant's symptoms. SSR 96-7p (1996 WL 374186). Once the claimant meets this burden, the second step of the analysis requires the ALJ to evaluate the intensity, persistence, and limiting effects of the claimant's pain to determine the extent to which the symptoms limit Plaintiff's capacity for work. *Smolen*, 80 F.3d at 1281. However, "[w]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

"Pain is subjective in both existence and degree." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (citing *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989)). "Yet despite the inability to measure it objectively, it can have 'severe debilitating effects' - even to the point of disabling a person who does not meet or equal the impairments listed in Appendix 1 and who would not objectively be expected to experience pain to the degree subjectively expressed." *Johnson*, 60 F.3d at 1433 (citing 20 C.F.R. § 404.1545(e) ("pain or other symptoms may cause a limitation of function

5

beyond ... the anatomical, physiological or psychological abnormalities considered alone")). Thus, the ALJ cannot discount a claim of "excess pain" without making "specific findings justifying that decision." *Johnson*, 60 F.3d at 1433 (citing *Fair*, 885 F.2d at 602).  "These findings must be supported by clear and convincing reasons why the claimant's testimony of excess pain was not credible, and must be supported by substantial evidence in the record as a whole." *Johnson*, 60 F.3d at 1433.  Such specificity is crucial so as to enable effective judicial review. *Mersman v. Halter,* 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").  Where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record," courts must not engage in second-guessing. *Fair*, 885 F.2d at 604.

     Here, the Court finds that the ALJ failed to make specific findings, supported by clear and convincing reasons to justify his decision.  In his opinion, the ALJ found as follows: "After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (AR 19.)  However, he fails to support this statement with clear and convincing reasons, and fails to detail the evidence in the record as a whole that supports his finding.  Instead, the ALJ makes general statements, such as "the claimant does not have a regular treating physician, and only the emergency records from 2005 support his claim,"  (AR 18.)  It is not enough for the ALJ to say that he has complied with the requirements of SSR 96-7p; rather, the Court can only properly review the decision if the ALJ provides specific, clear, and convincing reasons why Plaintiff's testimony is not credible.  While the ALJ's decision might be correct, the Court finds remand on this issue appropriate so that the ALJ can provide his reasoning in accordance with the standard above.

**B.     Whether the ALJ Erred when Assessing Plaintiff's Alleged Mental Impairment.**

Next, Plaintiff argues that the ALJ erred at the second step of the analysis in determining that Plaintiff's alleged mental impairment is not severe. Plaintiff raises three specific arguments: (1) the ALJ concluded that Plaintiff had only "mild" mental limitations,, despite the consultative examiner's findings, which were consistent with a "moderate" restriction; (2) the ALJ failed to provide any explanation for accepting one non-examining opinion over another; and (3) the medical evidence substantiates a "severe" mental finding. The Court shall consider each argument in turn.

      1.     <u>whether the ALJ incorrectly concluded that Plaintiff had mild limitations</u>

Plaintiff first argues that the ALJ improperly determined that Plaintiff had mild mental limitations, despite the findings of Ute Kollath, Ph.D., the consultative examiner. Specifically, at the second step of his analysis, the ALJ offered the following rationale in finding that Plaintiff has only mild mental limitations: "The consultative examiner diagnosed an adjustment disorder, but assigned a Global Assessment Functioning ("GAF")[2] of 60, one point below the range meaning that the claimant has some mild symptoms or some difficulty in social, occupational, or school functioning, but is generally functioning pretty well, and has some meaningful interpersonal relationships." (AR 18.)

Plaintiff correctly points out that according to the GAF scale, a rating of 60 falls within the category of moderate symptoms. However, the Court finds that the ALJ reasonably interpreted Plaintiff's score along with Dr. Kollath's overall opinion. The ALJ noted that Plaintiff's score of 60 was one point below the 61-70 score range of mild symptoms. Further, while Dr. Kollath diagnosed Plaintiff with an Adjustment Disorder of an unspecified type, Dr. Kollath found no psychosocial or environmental problems, that he "appear[ed] to be able to maintain concentration, persistence, and

---

[2] A person's Global Assessment of Functioning is a subjective determination representing the clinician's judgment of the individual's overall level of psychological, social, and occupational functioning. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting oneself or others, persistent inability to maintain minimum personal hygiene, or serious suicidal act with clear expectation of death). A GAF between 61-70 indicates mild symptoms. while a GAF between 51-60 indicates moderate symptoms or moderate impairment in those functioning areas. *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. (Text Revision) 2000) ("DSM-IV-TR"))

pace," was able to relate well in the consultative interview, and "would be able to interact with supervisors and co-workers in a job setting." (AR 147.) Dr. Kollath also found that Plaintiff could maintain concentration, interact with others in a job setting, and perform simple and complex tasks. (AR 148.)

Moreover, the Court finds no authority for the proposition that a GAF score of 60 mandates a disability finding. In fact, as Defendant points out in his opposition, the Social Security Administration has found that the GAF scale has no direct correlation to the severity requirements of its mental disorders listings. *See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 FR 50746-01 (Aug. 21, 2000). Thus, the Court finds that the ALJ reasonably interpreted Dr. Kollath's findings as indicating that Plaintiff had mild symptoms. *See Magallanes*, 881 F.2d at 750 (the ALJ is responsible for resolving conflicts in the medical testimony and analyzing the evidence).

       2.    <u>whether the ALJ failed to provide an explanation for accepting one non-examining opinion over another</u>

Plaintiff next argues that the ALJ failed to make clear why he gave more weight to the assessment of state agency psychiatric consultant Murray Krelstein, M.D., who determined only mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, (AR 167), while another state agency psychiatric consultant, Rosemary Tyl, M.D., found mild limitations in activities of daily living, but moderate limitations in maintaining social functioning and maintaining concentration. (AR 181.)

The social security regulations distinguish among the opinions of three types of physicians: (1) treating physicians; (2) non-treating examining physicians and (3) those who neither examine nor treat the claimant. 20 CFR § 416.927(d); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, more weight is given to the opinion of a treating source than a non-treating one. *Lester*, 81 F.3d at 830. When the opinion of a treating or an examining doctor is not contradicted by another doctor, the ALJ may reject that opinion only for "clear and convincing" reasons. *Id.* However, even if contradicted by another doctor, that opinion can still be rejected for specific and

8

1  legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830-31. The ALJ
2  is responsible for resolving any such conflicts in medical testimony. *Magallanes*, 881 F.2d at 750.
3  Moreover, an ALJ is entitled to give more weight to an opinion that is more consistent with the
4  record as a whole, 20 C.F.R. § 404.1527(d)(4).

5        In determining that Plaintiff did not have a severe mental impairment, the ALJ considered
6  the diagnosis of Dr. Kollath, as discussed above. (AR 18.) He also considered Dr. Krelstein's RFC,
7  which documents only mild limitations. (AR 18, 167.) However, he then states that "[t]here is no
8  other evidence of this impairment." (AR 18.) A review of the record before the Court shows that
9  there may, in fact, be other evidence. Specifically, there is no indication that the ALJ considered Dr.
10 Tyl's assessment. (AR 171-186.) While the Court recognizes that the ALJ is entitled to give more
11 weight to opinions that are more consistent with the record as a whole, and that the ALJ is
12 responsible for resolving any conflicts, the Court is unable to determine whether the ALJ did either
13 in this case. In reviewing the record, including Dr. Tyl's assessment, the Court is inclined to agree
14 with the ALJ that there is no evidence documenting a severe impairment[3], yet it is the ALJ's
15 responsibility to make that determination, not the Court's. Accordingly, the Court finds remand
16 appropriate for the ALJ to include a discussion of whether he considered all the evidence in the
17 record (specifically, Dr. Tyl's assessment).

18       3.    <u>Whether the medical evidence substantiates a "severe" mental finding.</u>

19       Plaintiff also argues that the medical evidence substantiates a severe mental impairment
20 finding. However, Plaintiff's argument appears to simply disagree with the ALJ's decision. In such
21 a case, the ALJ's decision must be upheld so long as the evidence is susceptible to more than one
22 rational interpretation and the Commissioner has provided such an interpretation. *Sandgathe v.*
23 *Chater*, 108 F.3d 978, 980 (9th Cir. 1997). As discussed above, it is not clear from the record that
24 the ALJ considered all the evidence regarding Plaintiff's alleged mental impairment. Accordingly,
25 the remand instructions above also apply to this argument.

---

27    [3] In his reply brief, Plaintiff argues for the first time that Dr. Tyl's assessment noted a severe mental impairment on Administrative Record page 171; however, the Court is unable to locate any such assessment.

28       9

**C.    Whether the ALJ erred in using the Medical-Vocational Guidelines and failing to obtain expert witness testimony.**

Finally, Plaintiff argues that the ALJ erred in relying on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 ("the Grids"), rather than soliciting the testimony of a vocational expert. Specifically, Plaintiff contends that the medical evidence of record and his own testimony indicate that pain and difficulty concentrating have been a major component of his inability to work, and that when a claimant has both exertional and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert.

If the ALJ determines that a claimant is unable to perform past relevant work, he must then show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the medically determinable impairments and symptoms, functional limitations, age, education, work experience and skills. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). There are two ways to meet this burden: (1) by the testimony of a vocational expert, or (2) by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

"[T]he ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Id.* at 1101. "At the hearing, the ALJ poses hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration. *Id.* (quoting *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987)). "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id.* (citation omitted). The vocational expert then testifies as to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled. *Id.* (citations omitted.)

The Grids are a matrix system for handling claims that involve substantially uniform levels of impairment. *See* 20 C.F.R. pt. 404, subpt. P, app. 2. The Grids present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant.

*Tackett*, 180 F.3d at 1101. The Grids categorize jobs by their physical-exertional requirements and consist of three separate tables-one for each category: "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work." 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00. Each grid presents various combinations of factors - the claimant's age, education, and work experience - relevant to a claimant's ability to find work. For each combination of these factors, the Grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. *Id.* "This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims." *Tackett*, 180 F.3d at 1101 (citing *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983) (discussing the creation and purpose of the Medical-Vocational Guidelines)).

The ALJ may rely on the Grids alone only when they accurately and completely describe the claimant's abilities and limitations. *Id.* at 1102. Thus, significant non-exertional impairments and/or pain may make reliance on the grids inappropriate. *Id.* at 1102-03. "However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id.* at 1103.

Here, Plaintiff alleges non-exertional limitations including mental problems, pain, and reduced range of motion of the arms. (AR 18-19.) Because alleged non-exertional limitations do not automatically preclude application of the grids, it is possible that the ALJ properly determined that Plaintiff's non-exertional limitations did not significantly limit the range of work permitted by his RFC for light work. From a review of ALJ's decision alone and without consideration of the entire record, it would appear that Plaintiff's non-exertional limitations do not significantly limit the range of work. However, as discussed in Section B above, it is not clear from the ALJ's decision that he considered all the evidence in determining that Plaintiff's alleged mental impairments were not severe. And, as discussed above in Section A, the ALJ did not reasonably explain why he rejected Plaintiff's testimony regarding his subjective complaints. Accordingly, the Court is unable

11

to determine whether the testimony of a vocational expert is necessary.

On remand, once the ALJ clarifies his reasoning and the evidentiary support for his decision as instructed above, he shall determine whether the Grids still accurately and completely describe Plaintiff's abilities and limitations. If they do, the testimony of a vocational expert is unnecessary. If the ALJ on remand determines that Plaintiff has significant non-exertional impairments, reliance on the Grids would be inappropriate and the ALJ must consult a vocational expert.

## VI.  CONCLUSION

Based on the foregoing analysis, the Court hereby DENIES Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion for summary judgment, and the GRANTS Plaintiff's motion to remand. The Court hereby REMANDS this case for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: February 9, 2009

_____
MARIA-ELENA JAMES
United States Magistrate Judge